# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALIM GADZHIEV,<br><br>　　　Petitioner,<br><br>　　v.<br><br><br>MARKWAYNE MULLIN, Secretary, Department of Homeland Security; TODD BLANCHE, Acting Attorney General, Department of Justice; TODD M. LYONS, Acting Director, Immigration and Customs Enforcement; JESUS ROCHA, Acting Field Office Director, San Diego Field Office; CHRISTOPHER LAROSE, Warden, Otay Mesa Detention Center;<br><br>　　　Respondents. | Case No.:  3:26-cv-00857-BTM-VET<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF NO. 8]** |

Pending before the Court is Salim Gadzhiev's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART the petition and orders the Respondents to provide him with an individualized bond hearing before a fair, neutral, and open-minded immigration judge.

## I.    BACKGROUND

Gadzhiev arrived at the U.S. border on August 3, 2025.  (ECF No. 8-1, Ex. A ("Decl."), ¶ 1, 6.)  He sought asylum after experiencing ethnic discrimination and torture in Russia.  (*Id.* ¶ 1–4.)  Gadzhiev was detained under 8 U.S.C. § 1225(b) and interviewed about his asylum claim.  (*See id.* ¶ 6–7.)  On August 24, 2025, the Respondents initiated Section 1229a removal proceedings against Gadzhiev.  (ECF No. 9, Ex. 1 ("NTA").)

Gadzhiev's first hearing was scheduled for September 4, 2025.  (*Id.*; ECF No. 9, Ex. 2 ("EOIR Hearing Report").)  He continued the hearing to September 24, 2025.  (EOIR Hearing Report.)  Gadzhiev attests that he was ready to proceed on September 24, but was told another hearing was scheduled in October 2025, and later in November 2025.  (Decl., ¶ 7–8.)  The Respondents have filed a report that shows Gadzhiev continued his hearings on September 24, 2025, and October 22, 2025, to seek legal counsel and prepare his asylum claim.  (*See* EOIR Hearing Report.)  The parties agree that on November 19, 2025, the immigration court scheduled the Petitioner's individual merits hearing for April 1, 2026.  (*See* Decl., ¶ 8; EOIR Hearing Report.)  On April 1, 2026, the Petitioner's merits hearing was rescheduled to April 28, 2026, because "another priority matter was scheduled at the same time."  (ECF No. 12, at 1.)

Gadzhiev is detained at the Otay Mesa Detention Center.  (ECF No. 1-4; *see* NTA.)  He filed a petition for the writ of habeas corpus on February 9, 2026, and an amended petition on March 2, 2026.  (ECF No. 1; ECF No. 8 ("Am. Pet.").)  Gadzhiev has been in custody for more than nine months.

## II.    DISCUSSION

The Petitioner claims the Due Process Clause of the Fifth Amendment prohibits unreasonably prolonged immigration detention without a bond hearing.  (Am. Pet., 3–11.)  He also contends that immigration judges are not neutral and that the Court should order his release outright or provide additional safeguards for the bond hearing.  (*Id.* at 11–18.)

The Respondents contend that the Court lacks jurisdiction.  (ECF No. 9 ("Return"), at 4–5.)  The Respondents claim that the Petitioner is lawfully detained under 8 U.S.C.

2

§ 1225(b)(2) and not entitled to a bond hearing. (*Id.* at 5–11.) Alternatively, they argue the Petitioner is not entitled to a bond hearing because his detention is not unconstitutionally prolonged. (*Id.* at 11–16.) The Respondents also contend that, should the Court find that the Petitioner is entitled to habeas relief, the Court should decline to grant release and instead order a bond hearing. (*Id.* at 16–18.)

### A.    Jurisdiction

The Court has long had jurisdiction to issue writs of habeas corpus to petitioners held in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2241(c)(3); *see* Judiciary Act of 1789, ch. 20, 1 Stat. 73, 81–82. Yet the Respondents argue that the Court lacks jurisdiction over this petition under 8 U.S.C. § 1252(g).

This is the same jurisdictional argument that other decisions in this district have soundly rejected. *See, e.g.*, *Tran v. Noem*, No. 25-cv-02391, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025). The Petitioner is not challenging his removal, the execution of a removal order, or a discretionary decision by the Attorney General. *See Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders."). Rather, the Petitioner solely challenges the constitutionality of his detention without a bond hearing. The Court therefore adopts the reasoning of the other decisions in this district, rejects the Respondents' argument, and finds that it has jurisdiction to review the petition.

### B.    Merits

#### i.    Due Process under Section 1225(b)(1)

The facts and legal arguments are similar to those presented in the Court's previous decision, *Singh v. LaRose*, No. 26-cv-00842, 2026 WL 684654 (S.D. Cal. Mar. 10, 2026). The Court adopts *Singh*'s reasoning and applies it here.

The Court holds that the Due Process Clause prohibits unreasonably prolonged detention without a bond hearing. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This

26-cv-857

protection extends to those detained under Section 1225, such as the Petitioner. *See Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."). The Court further holds that *Shaughnessy v. United States ex rel. Mezei* does not apply here. 345 U.S. 206 (1953). The petitioner in *Mezei* had been deemed "a threat to national security." *Rosales-Garcia v. Holland*, 322 F.3d 386, 413–14 (6th Cir. 2003). There has been no determination in the record that the Petitioner here is a danger to national security. The Court also finds unpersuasive the argument that *Barrera-Echavarria v. Rison* binds this Court to find that noncitizens[1] "have no substantive right to be free from immigration detention." 44 F.3d 1441, 1450 (9th Cir. 1995), *superseded by statute*, Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104–208, 110 Stat. 3009–546, *as recognized in Xi v. U.S. Immigr. & Naturalization Serv.*, 298 F.3d 832, 837–38 (9th Cir. 2002). "[T]he constitutionality of 'indefinite' or 'permanent' detention with no prospect of release" was not at issue in *Barrera-Echavarria* as it is here. *Id.* at 1450.

Having found that the Petitioner has a right against prolonged detention, the Court must determine whether the Petitioner's detention is so prolonged as to violate the Due Process Clause.

### ii.    Prolonged Detention

When deciding whether a petitioner's continued detention would violate the Due Process Clause, many district courts have looked to the factors articulated in *Banda v. McAleenan*:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings

---

[1] This order uses the term "noncitizen" as equivalent to the statutory term "alien." 8 U.S.C. § 1101(a)(3); *see Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020).

26-cv-857

cause [sic] by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal."

385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019) (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)). The Court finds it appropriate to apply the *Banda* test to the Petitioner's detention as other decisions in this district have done. *See, e.g.*, *Sandesh v. LaRose*, No. 26-cv-00846, 2026 WL 622690 (S.D. Cal. Mar. 5, 2026).

The length of detention is the "most important factor." *Banda*, 385 F. Supp. 3d at 1118. The Petitioner had been detained without a bond hearing for over nine months. This length of time "does not presumptively establish unreasonably prolonged detention, but neither does it prevent constitutional scrutiny." *Mtiulishvili v. LaRose*, No. 26-cv-00387, 2026 WL 377870, at *3 (S.D. Cal. Feb. 10, 2026). Although some courts have found detention lasting up to nine months to be reasonable, *see Miagkikh v. LaRose*, No. 3:25-cv-03755, 2026 WL 237742, at *2 (S.D. Cal. Jan. 29, 2026), many courts in this district have found detention beyond seven months to be unreasonably prolonged, *see, e.g.*, *Amado v. U.S. Dep't of Just.*, No. 25-cv-02687, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) (collecting cases).

The Court follows the approach of the latter. The prolonged detention at issue is of "a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Whitaker*, 358 F. Supp. 3d at 859. The Respondents have also not presented any merits argument that justifies further detention without a bond hearing. They instead rely on *Markov v. LaRose* to argue that the Court has denied petitions where detention has lasted longer than seven months. No. 25-cv-3811, 2026 WL 92069 (S.D. Cal. Jan. 13, 2026). The Court there held that the Petitioner's "length of detention" of one year, "without more, does not render his detention unreasonable." *Id.* at *2. But here, as the Court discusses below, there is more. Thus, *Markov* is inapposite to this case. Based on the absence of any finding of danger or flight risk, and the failure of the Respondents to discuss the length of detention on its merits, the Court finds that this factor favors the

26-cv-857

Petitioner.  The weight is only slight, however, as the Court recognizes that the length of detention is at the low end of time deemed prolonged in this district.

The second factor, likely duration of future detention, considers "the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (quoting *Jamal A.*, 358 F. Supp. at 859).  Here, as in *Sandesh*, "Petitioner has not yet had his final merits hearing, and if he loses, will file an appeal to the BIA and will have an opportunity to appeal to the Ninth Circuit as well." 2026 WL 622690, at *4.  This process may take years.  *See Banda*, 385 F. Supp. 3d at 1119.  The Court finds that this factor weighs in favor of the Petitioner.

The third factor, conditions of detention, favors the Petitioner.  "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing."  *Banda*, 385 F. Supp. 3d at 1119.  Here, the Petitioner has not pleaded that the conditions of his confinement at the Otay Mesa Detention Center resemble prison.  At most, his declaration states that the food and other conditions at Otay Mesa are worsening his preexisting medical issues.  (Decl., ¶ 12.)  Nevertheless, other courts in this district have found that conditions at Otay Mesa are "indistinguishable from penal confinement."  *Kydyrali*, 499 F. Supp. 3d at 7723; *see, e.g.*, *Guerrero v. Divver*, No. 26-cv-01966, 2026 WL 1004847 (S.D. Cal. Apr. 14, 2026).  Also, the Respondents do not dispute the Petitioner's argument on the conditions of his confinement.  (*See generally* Return.)  Moreover, the Petitioner has medical conditions including a prolapsed rectum that are worsening.  The Court therefore finds that this factor weighs in his favor.

The fourth and fifth factors consider the nature and extent of the delays caused by the parties.  The Respondents argue that the Petitioner delayed his proceedings by continuing his September and October 2025 hearings.  (Return, 15; *see* EOIR Hearing Report.)  The Court need not decide whether the Petitioner or Respondents delayed these hearings.  Assuming that the Petitioner did so, the Court finds that the reason noted for the continuances—seeking legal counsel for the Petitioner's asylum claim—mitigates their

26-cv-857

weight in the analysis.  The Respondents go on to acknowledge that the immigration court delayed the Petitioner's proceedings by scheduling his merits hearing five months after his November 19, 2025 hearing.  Nonetheless, they contend that this delay should not be attributed to the government: "[I]f the Petitioner truly desired a faster merits hearing," he should have filed a motion to advance or a writ of mandamus to expedite the immigration process.  (Return, 15.)

The Court disagrees and holds the delay against the Respondents for two reasons. First, the delay is attributable not to the Petitioner but the likely "crowded docket of the immigration courts." *Cui v. Mukasey*, 538 F.3d 1289, 1295 (9th Cir. 2008).  The Court understands that this department is busy, but "an immigrant's right to have her case heard should not be sacrificed because of the [immigration judge's] heavy caseload." *Id.*  Second, the Respondents ask the Court to penalize the Petitioner for not attempting to accelerate his case regardless of whether acceleration is appropriate.  Parties may file a motion to advance "where the circumstances demonstrate" that a case should be expedited, "including where a qualifying member is going to age out, the one-year asylum deadline is approaching, or a family member is critically ill and/or dying." Maria Baldini-Potermin, *Immigration Trial Handbook* § 5:32 (Christopher Kozoll ed., updated ed. 2025). Mandamus is a "'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947)).  "Only exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion, will justify the invocation of this extraordinary remedy." *Id.* (citation modified).  Neither a motion to advance or mandamus should be filed frivolously.  The Respondents' argument implies, however, that a noncitizen should move to expedite his case, irrespective of merit, to demonstrate that they "truly desire[]" a closer hearing date. (*See* Return, 15.)  The Court rejects this argument and does not read into the Petitioner's decision not to expedite.  The five-month delay is attributed to the Respondents.

26-cv-857

Furthermore, the parties' joint status report stated that the Petitioner's merits hearing was reset because "another priority matter was scheduled at the same time." (ECF No. 12, at 1.) This delay shows that the immigration judge would not likely have granted a motion to move this case up. For this reason and the reasons stated above, the *Banda* factors regarding delay favor the Petitioner.

The sixth factor, the likelihood that the removal proceedings will result in a final order of removal, is neutral. The Court "is in no position to judge the likelihood of success of this argument" or his claim for asylum. *Sandesh*, 2026 WL 622690.

The first factor slightly favors the Petitioner, the second through fifth factors favor the Petitioner, and the sixth factor is neutral. Taken together, the Court finds that the Petitioner's prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment.

**C.     Relief**

The Petitioner claims that the neutrality of immigration judges has been "severely compromised." (Am. Pet., 11.) He contends that immigration judges have been encouraged to rule for the Respondents and "minimize due process." (*Id.* at 15.) Thus, the Petitioner argues that immigration judges will not be fair and impartial and seeks release as a remedy instead of a bond hearing. (*Id.* at 18.) In the alternative, he requests this Court to hold a bond hearing. (*Id.* at 18–19.)

To remedy the violation of the Petitioner's Due Process rights, the Court is ordering an individualized bond hearing with additional safeguards. *See Singh v. Holder*, 638 F.3d 1196, 1200 (9th Cir. 2011) (holding that noncitizens "facing prolonged detention" are "entitled to a bond hearing before a neutral immigration judge."). The bond hearing must be before a fair, neutral, and open-minded immigration judge who is ordered to determine whether the Petitioner is a danger to the community or a flight risk and what bond conditions, if any, would be appropriate to ensure the Petitioner's appearance. During the bond hearing, the Respondents shall bear the burden of establishing by clear and convincing evidence that the Petitioner poses a danger or flight risk. *See Sandesh*, 2026

26-cv-857

WL 622690, at *5 ("[I]t [is] appropriate to continue to apply the standard set forth in *Singh* [*v. Holder*] in the case of bond hearings for those subjected to prolonged detention under § 1225(b) to protect the critical liberty interest and due process rights of such individuals."). If the immigration judge denies bond, the judge must make specific findings as to why the Petitioner is a flight risk or a danger to the community.

The Court declines to grant outright release for the same reason it discussed in *Singh v. LaRose*:

> If the Petitioner believes that the Respondents or the immigration judge violated this order and the writ, the Petitioner can apply to this Court for appropriate sanctions. If past history is any guide, the Respondents have shown the upmost respect for this Court's judgments and has timely followed them thereby enabling the mutual respect of the Court. There is no reason to believe that the mutual respect for coequal branches of the government will not continue here in the Southern District of California.

2026 WL 684654, at *4. The remedy of release without bond is denied without prejudice. The alternative remedy of a bond hearing in front of this Court is also denied without prejudice.

//
//
//
//
//
//
//
//
//
//
//
//
//

26-cv-857

## III. CONCLUSION

For the reasons stated, the petition for a writ of habeas corpus is **GRANTED IN PART**. The Respondents are ordered to grant Gadzhiev an individualized bond hearing before a fair, neutral, and open-minded immigration judge in accordance with the requirements ordered above. The hearing must be held no later than May 28, 2026. The remedy of release without a bond hearing is **DENIED** without prejudice. The alternative remedy of a bond hearing in front of this Court is **DENIED** without prejudice.

The parties shall file a joint statement as to compliance with this writ and order and the result of the bond hearing by 5 p.m. on May 29, 2026. If the Petitioner's merits hearing results in the Petitioner's release, the parties may file a motion to vacate this writ as moot. The Court retains jurisdiction to enforce the writ.

**IT IS SO ORDERED.**

Dated: May 14, 2026

Honorable Barry Ted Moskowitz
United States District Judge

26-cv-857